IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA G., <br><br> Claimant, <br><br> v. <br><br> MARTIN O'MALLEY, <br> Commissioner of Social Security, <br><br> Respondent. | No. 21 C 1779 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Maria G.[1] ("Claimant") appeals the final decision of Respondent Martin O'Malley,[2] Commissioner of the Social Security Administration ("Commissioner"), denying her applications for disability insurance benefits and supplemental security income. For the reasons set forth below, Claimant's Memorandum in Support of Summary Remand [ECF No. 20] is granted. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## BACKGROUND

On December 18, 2017, Claimant filed applications for disability insurance benefits and supplemental security income, alleging a disability beginning August 4, 2017. (R.37). Her claims were denied initially and on reconsideration, and Claimant then requested a hearing. (R.37). Administrative Law Judge ("ALJ") William Spalo held a hearing on October 16, 2019, and issued a decision on October 30, 2019, finding Claimant was not disabled. (R.37-49). The Appeals Council declined to review the ALJ's decision (R.14-20), and therefore, the ALJ's decision is considered the final decision of the Commissioner. Judicial review of that final decision by this Court is authorized by the Social Security Act, 42 U.S.C. § 405(g).

## DISCUSSION

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for

determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

In this case at step one, the ALJ found that Claimant had not engaged in substantial gainful activity since August 4, 2017, the alleged onset date of her disability. (R.39). At step two, the ALJ found that Claimant has the following severe impairments: fibromyalgia, mild degenerative disc disease of the lumbar spine, degenerative joint disease of the left shoulder, diabetes mellitus, and obesity. (R.39). At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (R.19). The ALJ then determined Claimant has the RFC to perform light work with the following limitations: "claimant can never climb ladders, ropes or scaffolds. She can occasionally climb ramps or stairs. The clamant can occasionally reach to the front and side, with the left (non-dominant) upper extremity, but she can never reach overhead with the left (non-dominant) upper extremity." (R.41). At step four, the ALJ concluded that Claimant is unable to perform any past relevant work. (R.47). At step

3

five, the ALJ found that jobs exist in significant numbers in the national economy that Claimant can perform, and thus she is not disabled. (R.47-48).

Claimant asserts two arguments challenging the ALJ's decision, including: (1) the ALJ improperly rejected the opinion of Claimant's treating physician, Amado Rueda, M.D.; and (2) the ALJ's erred in evaluating Claimant's subjective symptoms and assessed an incomplete RFC that does not account for her fibromyalgia. The Court begins with Claimant's second argument that the ALJ's analysis of her fibromyalgia was inadequate, and as a result, the RFC does not account for all Claimant's limitations. The Court agrees with Claimant.

The ALJ acknowledged that Claimant was diagnosed with fibromyalgia in December 2017 and that physical examinations revealed 16-18/18 positive tender points. (R.42). The ALJ noted that Claimant participated in physical therapy for one month without any significant improvement and was treated with medication that had been adjusted throughout the relevant period. (R.42). The ALJ then stated that he accounted for Claimant's fibromyalgia by limiting her "to light work, with only occasionally climbing ramps or stairs, as greater exertion could increase the claimant's pain and lead to fatigue." (R.42). When specifically discussing Claimant's fibromyalgia, however, the ALJ did not mention any of the record evidence or Claimant's testimony about the constant pain she experiences as a result of her fibromyalgia and did not provide any explanation how the limitations included in the RFC would accommodate Claimant's fibromyalgia pain.

4

The ALJ also did not discuss Claimant's daily activities in the context of the pain and fatigue she was experiencing from her fibromyalgia and how it limited her abilities. The ALJ appears to have ignored or at least given very short shrift to the numerous limitations Claimant described in her daily activities. In addition, the ALJ dismissed third-party function reports from Claimant's siblings and found their reports that Claimant cannot independently perform activities inconsistent with her "ability to live alone." (R.46). But the record shows that Claimant lives in her brother's basement, and her brother and other siblings assist her with activities inside and outside the house. (R.150, 171-72, 174, 175). So, the ALJ's statement that Claimant lives alone mischaracterizes the record. The ALJ needs to better address the testimony and evidence on Claimant's limitations in her activities of daily living and provide a more fulsome explanation how the limitations included in the RFC can accommodate Claimant's fibromyalgia pain and her physical limitations. Without that logical bridge explaining how and why the facts in the record lead the ALJ to his conclusion, the Court cannot assess the legal sufficiency of the ALJ's analysis, and remand is required.

Later in the opinion, the ALJ does address Claimant's statements about the intensity, persistence, and limiting effects of her symptoms. Specifically, the ALJ concluded:

> [Claimant's statements] are inconsistent with the objective medical evidence. For example, the claimant alleges that she has pain in her hands that limits her ability to perform fine and gross movements, but the record contains no such abnormalities. She has consistently had intact grip strength, without signs of weakness (2F/10, 14; 10F/20, 23, 26; 12F/6). Further, her neurological exams have been substantially

5

> normal (3F/8, 10, 13, 15, 18, 20; 5F/12; 9F/5, 14, 15, 27, 30, 34, 37, 39, 42, 44; 12F/7). Similarly, the claimant alleges neuropathy in her feet (hearing testimony), but the record does not contain any objective neurological deficits until July 2019, when the claimant had a positive monofilament test in both feet (6F/5). However, no significant treatment was recommended (6F/6), which suggests that the reduced sensation was not as severe or as limiting as alleged by the claimant.

(R.44). The ALJ's analysis, however, reveals that he misunderstands the nature of fibromyalgia pain and that a diagnosis of fibromyalgia cannot be measured with objective tests. Courts in this district repeatedly have stated that fibromyalgia pain cannot be adequately assessed through the kind of objective medical evidence that the ALJ relied on throughout his decision.[3] Fibromyalgia has been described as follows:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

---

[3] *See O'Brien v. Berryhill*, 2017 WL 4921960, at *5 (N.D. Ill. Oct. 31, 2017) ("[T]he ALJ did not explain how a finding of normal range of motion, normal gait, 5/5 motor strength, and a neurological examination within normal limits is inconsistent with the debilitating pain associated with fibromyalgia.... [F]ibromyalgia is characterized by widespread pain, not by an inability to walk or a decrease in range of motion."); *Brown v. Berryhill*, 2019 WL 499410, at *4 (N.D. Ind. Feb. 7, 2019) ("The ALJ has not explained how evidence of normal range of motion, gait, motor strength, and results from neurological examinations are inconsistent with significant limitations due to fibromyalgia."); *Meade v. Colvin*, 2013 WL 5498263, at *11 (N.D. Ind. Sept. 30. 2013) (holding that the ALJ's "repeated references to the fact that [the claimant] had full range of motion in all joints and that her joints were not swollen" was "troubling" because "swelling of the joints is not a symptom of fibromyalgia").

*Molly K. v. Saul*, 2019 WL 3857885, at *8 (N.D. Ill. Aug. 16, 2019), quoting *Sarchet v. Chater*, 78 F.3d 395, 306-07 (7th Cir. 1996).

In this case, it is not disputed that Claimant tested positive for at least 16 out of 18 total tender or trigger points. (R.42); *see Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment."). None of the reasons given by the ALJ— *i.e.*, no abnormalities in gross and fine motor skills, intact grip strength without signs of weakness, and substantially normal neurological exams—are legally adequate to discount Claimant's subjective complaints. Additionally, the ALJ noted that "no significant treatment was recommended" which led the ALJ to conclude Claimant's pain and reduced sensation were "not as severe or as limiting as alleged by the claimant." (R.44). This reasoning is faulty, too.[4] Ultimately, the reasons the ALJ cited to discount Claimant's subjective complaints are flawed and reveal the ALJ fundamentally misunderstands the nature of Claimant's fibromyalgia and the pain she experiences. For all these reasons, remand is required.

Because the above issue is dispositive, the Court need not address Claimant's remaining argument that ALJ improperly rejected the opinion of Claimant's treating

---

[4] *See Marianne T. v. Saul*, 2021 WL 1088322, at *3 (N.D. Ill. Mar. 22, 2021) ("[T]he ALJ failed to suggest what more aggressive treatment was available for [claimant's] fibromyalgia. The ALJ's characterization of [claimant's] treatment as conservative therefore misapprehends the medical options available for treating fibromyalgia. Because there is no cure for fibromyalgia, treatment options are constrained to nonnarcotic pain relievers, exercise, and stress-reduction measures.") (citations and internal quotations omitted); *Thorn v. Berryhill*, 2017 WL 748596, at *5 (N.D. Ill. Feb. 27, 2017) (holding that an ALJ cannot engage in "layperson speculations about what constitutes routine or conservative treatment for a person with fibromyalgia").

7

physician Amado Rueda, M.D. Based on the ALJ's clear misunderstanding of how fibromyalgia should be evaluated, the Court encourages the ALJ evaluate the medical opinions of record with a more informed understanding of fibromyalgia and build a legally acceptable logical bridge between the evidence in the record and his ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672 (7th Cir. 2009); *Smith v. Apfel*, 231 F.3d 433 (7th Cir. 2000).

## CONCLUSION

For the reasons set forth above, Claimant's Memorandum in Support of Summary Remand [ECF No. 20] is granted. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 23, 2024